UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>   -vs-<br>ARVIN TERRILL CARMEN (1),<br>INALIEL COHAN LISBY (4),<br>DONTA LYVOID BLACKMON (8),<br>BRANDON LEIGH CHAVEZ (11),<br>ANGELA BELL COLLINS (13),<br>DEANDRE DERRICK MEIGHAN (27),<br>PRINCETON JAMAAL LEE PERRY (32),<br>MERCEDES LASHAWN REEVES (34),<br>MAURICE KEYONGRAY SHELMON (35),<br>and KARLYNN ROMEO TONES (36),<br><br>                Defendants. | No.   2:13-CR-0008-WFN<br><br>ORDER RE: JULY 15, 2014<br>PRETRIAL CONFERENCE AND<br>MOTION HEARING |

A pretrial conference and motion hearing was held July 15, 2014. Defendants were present and represented by counsel as reflected in Attachment A to this Order; Assistant United States Attorneys Russell Smoot and Stephanie Van Marter represented the Government. The Court heard oral argument on Defendants' pending pretrial motions as set forth *infra*. The Court has reviewed the file and Defendants' Motions and is fully informed. This Order is entered to memorialize and supplement the oral rulings of the Court.

1. <u>Defendants' Motion and Memorandum Supporting the Motion to Reconsider the Order on Wiretap Suppression Motions for Target Telephones [TT] 1 and 2</u>

In a May 14, 2014 Order, the Court denied in part Defendants' Motions to Suppress Wiretap Intercepts. ECF No. 2159. The Court found that the Affidavits supporting the Government's wiretap applications for TT1, TT2, TT3, TT5, TT6, and TT7 largely

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 1

satisfied Title III's probable cause and necessity requirements. Defendants ask the Court to reconsider this Order as it pertains to TT1 and TT2.[1] (In a separate Order, not at issue, the Court granted Defendants' Motion to Suppress as it pertained to communications intercepted from TT5 between October 31, 2012 and November 15, 2012. ECF No. 2158.)

Defendants first argue that the Court erred by concluding that the Affidavit described the drug trafficking organization [DTO] with sufficient particularity. Citing to Footnote 10, TT1 Affidavit at ¶ 14, Defendants argue that it "is apparent" that the TT1 Affidavit "chose not to disclose all that was 'particularly' known to law enforcement about the DTO that law enforcement had uncovered through traditional investigative means." (ECF No. 2181 at 3.) Footnote 10 states:

> Although many individuals believed to be associated with CARMEN, HAYNES, TURNER, HORN, JEFFERSON, and REEVES, are named and/or discussed within this affidavit, I have not included all suspected associates or co-conspirators thus far identified during the investigation.

TT1 Affidavit at ¶ 14, n.10. Defendants argue that Footnote 10 essentially constitutes an admission that SA Sullivan did not present a "full and complete" picture of the suspected conspiracy to the reviewing judge.

The Court disagrees that Footnote 10 invalidates the Court's previous finding that the TT1 Affidavit contained a full and complete statement of probable cause. The First Circuit addressed a similar challenge to a wiretap affidavit in *United States v. Yeje-Cabrera*, 430 F.3d 1 (1st Cir. 2005). In *Yeje-Cabrera*, the wiretap affidavit stated:

> Since this Affidavit is being submitted for the limited purpose of securing an order authorizing the interception of wire communications, *I have not included details of every aspect of this investigation to date*. Facts not set forth herein are not being relied on in reaching my conclusion that an order should be issued.

---

[1] Although Defendants' Motion claims to apply to both TT1 and TT2, the issues raised appear exclusively related to TT1.

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 2

*Id.* at 9 (emphasis added). Like Defendants in this case, *Yeje-Cabrera* argued that this statement "constituted an admission that the affiant "expressly ignored the 'full and complete statement' requirement." *Id.* The First Circuit disagreed, finding that such an argument "fundamentally misreads 18 U.S.C. § 2518(1)(c)." *Id.*

> The requirement of a full and complete statement cannot possibly mean that every single detail, even if relevant to the wiretap, must be included. The plain language of § 2518(1)(c) only requires a full and complete statement "as to" the crucial issue: "whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(1)(c). Many aspects of an investigation, especially in a large, complex case like this one, will not be relevant to the question of whether a particular wiretap is necessary. And even if there is some relevance, the officer need not detail every single fact, so long as sufficient facts are described as to the crucial issue and material contrary facts are not omitted.

*Id.* at 9-10. *See also United States v. Gambardella*, 2009 WL 5217996, at *1-2 (D. Conn. 2009) (labeling as "stingy and unpersuasive" a defendant's identical challenge to an affidavit that stated "this affidavit does not purport to set forth all of the facts gathered during the investigation of this matter."). Footnote 10 does not provide grounds for the Court to reconsider its earlier order.

Defendants next argue that the TT1 Affidavit fails to establish (1) that TT1 was "used, or about to be used in connection with" specified illegal drug activity and (2) that the person connected to the "facility"—TT1—was the Sharita Horn under investigation, or that Sharita Horn commonly used TT1. (ECF No. 2181 at 5.) This argument is the same as the argument made by Defendants in their earlier motion to suppress intercepts from TT1. The Court's prior Order provides:

> The TT1 Affidavit states that CS-4 provided law enforcement with the phone number of TT1 after Horn provided the number to CS-4 so that Horn and CS-4 could discuss distribution of OxyContin. TT1 Affidavit at ¶ 77. Pen register and toll record analysis further revealed that TT1 was in contact with other suspected conspirators, including Arvin Carmen, Richard Haynes, Joeisha Jefferson, and Mercedes Reeves. TT1 Affidavit at ¶¶ 90-118.

ECF No. 2159 at 8. Defendants fail to refute these statements or otherwise show that the Court's ruling was in clear error. Defendants' Motion shall be denied.

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 3

2. <u>Defendants' Motion to Reconsider Denial of Suppression as to [TT] 7</u>

Defendants argue that the Court erred in finding the TT7 Affidavit supported by probable cause after having suppressed TT5 intercepts from October 31, 2012 to November 15, 2012. (ECF No. 2158.) Defendants argue that the Court's citation to ¶¶ 20-23, *see* ECF No. 2158 at 17, cannot support a finding of probable cause because those paragraphs are conclusory.

It is true that TT7 Affidavit ¶¶ 20-23 are somewhat conclusory. But, as the Government argues, the TT7 Affidavit must be read in context with the other affidavits, particular the TT1 and TT2 Affidavits, which set forth more detailed statements of probable cause. All the preceding affidavits were incorporated into the TT7 Affidavit. The Court's earlier Order accounted for information contained in the preceding affidavits. *See* ECF No. 2158 at 17 ("Affidavits for TT1 and TT2, which are incorporated into TT7, both contain evidence (derived from CSs and controlled buys) that Haynes is involved in drug trafficking activities. *See*, *e.g.*, TT1 Affidavit at ¶¶ 34 (Haynes target of controlled buy), 38 (CS-2 connects Haynes to drug trafficking conspiracy)."). Defendants fail to show that the Court's prior ruling with in clear error or provide other grounds for reconsideration. Defendants' Motion shall be denied.

3. <u>Defendants' Motion and Memorandum Supporting the Motion to Grant an Evidentiary Hearing Pursuant to *Franks v. Delaware* and Suppress Evidence Obtained from Illegal Communication Intercepts from [TT] 1 & 2</u>

Defendants argue that the TT1 Affidavit contains one intentional misrepresentation and seven material omissions that justify a *Franks* hearing.

The Fourth Amendment entitles a defendant to challenge the validity of a search warrant if the defendant makes a "substantial preliminary showing" that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. DeLeon,* 979 F.2d 761, 763 (9th Cir.1992) (citing *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978)). *Franks* also applies to "omissions of material facts." *Id.*

To determine the materiality of a false statement or omission, the Court must consider the effect of the statement or omission. *United States v. Ruiz*, No. 13-30003, at 8 (9th Cir. July 11, 2014). "If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant." *Id.* "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* "If probable cause remains after amendment, then no constitutional error has occurred." *Id.*

### a. Whether "depicted" is an intentional or reckless misstatement of "looked like"

Defendants argue that the TT1 Affidavit intentionally or recklessly misstates that CS-6 advised that the [Facebook] photograph *depicted* the person he knew as "Star". In actuality, the police report states that CS-6 "advised the agent that the individual in the photograph *looked like* Star." ECF No. 2284 at 119. And in another report, CS-6 stated that a picture might "possibly [be] Star." ECF No. 2284 at 127. Defendants also point out that CS-6 is the only person to refer to someone with the moniker "Star".

The Court finds that Defendants have failed to make a substantial showing that SA Sullivan's use of the word "depicted" is an intentional or reckless misstatement of "looked like". The words appear to mean the same thing and there is no showing that SA Sullivan attempted to distort the truth in his choice of words. Furthermore, the TT1 Affidavit uses the word "depicted" on multiple occasions when referring to photo identifications. *See*, *e.g.*, TT1 Affidavit at ¶ 61 ("CS-5 advised that the photograph *depicted* the person she knew as 'School Girl.'"). And even if it was an intentional/reckless misstatement, it is not material to probable cause. Even with CS-6's identification (or misidentification) of Horn purged from the TT1 Affidavit, there would still be sufficient probable cause as discussed *infra*.

### b. TT1 Affidavit omitted whether CS-2 made a correct identification of Horn using photo line-up

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 5

Regarding CS-2's use of photo line-ups, Defendants argue that the Affidavit does not state whether CS-2 *correctly* identified Horn (although the Affidavit does state that CS-2 accurately identified Haynes and Carmen).  The Government argues that failing to expressly state that CS-2 correctly identified Horn was perhaps inadvertent.  But even if such an omission was included, it would strengthen, not weaken, probable cause.  In reply, Defendants argue that the Government wrongly assumes, without proof, that CS-2 made a correct identification.

It is true that the TT1 Affidavit does not explicitly state that CS-2 correctly identified Horn in a photo line-up.  And the Court agrees with Defendants that it cannot assume that CS-2 made a correct identification without more evidence.  Nevertheless, the Court finds that Defendants have not met their burden to make a substantial preliminary showing that this omission was reckless or intentional.  Furthermore, it is not a material omission.  Even if CS-2 misidentified Horn in a photo line-up, CS-2 also provided identifying information about Horn based on CS-2's personal observations.  Notably, CS-2 reported two instances where he/she personally observed Horn distributing pills.  TT1 Supp. Affidavit at ¶ 5; *see also Ruiz*, No. 13-30003 at 12 ("[M]agistrate judge not misled because witness provided 'ample' evidence in the form of first-hand observations implicating the suspect.") (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009)).  The TT1 Affidavit also contains sufficient corroborating information from other sources, such as CS-4 and CS-5, which bolsters a finding for probable cause against Horn.

### c. TT1 Affidavit omitted the fact that CS-3 failed to identify Horn using photo line-up

Defendants argue that the TT1 Affidavit omits the fact that CS-3 could not identify Horn using a photo line-up.  ECF No. 2252 at 11 (citing [ECF No. 2284 at 88]).  Defendants also point out that the TT1 Affidavit expressly stated that CS-3 had personal knowledge about Horn's involvement in drug trafficking activity.

It is true that the TT1 Affidavit does not state that CS-3 failed to identify Horn.  This omitted fact might tend to exculpate Horn.  But CS-3 contributes little to probable cause

against Horn personally. The value of CS-3's information is to associate someone named "School Girl" with Carmen and Reeves and that "School Girl" regularly travelled between Los Angeles and Spokane. TT1 Affidavit at ¶ 72. The fact that CS-3 was unable to identify Horn does not negate the other statements within the TT1 Affidavit establishing probable cause against Horn. Because probable cause would remain if the Court excised CS-3's statements from the TT1 Affidavit, CS-3's inability to recognize a photo of Horn would has no material effect on probable cause.

### d. TT1 Affidavit omitted a reference to the fact that law enforcement officers also associated "School Girl" moniker with Michelle Anderson

Defendants argue that the TT1 Affidavit omitted the fact that law enforcement officers associated the "School Girl" moniker with Michelle Anderson. Defendants point to two police reports where an informant made this association: a police report dated May 16, 2012, ECF No. 2284 at 93, and a police report dated January 18, 2012, ECF No. 2284 at 110.

The Court finds that two instances where law enforcement assigned the "School Girl" moniker to Anderson is not a fact material to whether there was probable cause that TT1 was, or would be, used in furtherance of drug-trafficking activity in August 2012. An affidavit does not need to contain information about all suspects of an investigation. *See United States v. Wulferdinger*, 782 F.2d 1473 (9th Cir. 1986). Furthermore, CS-5 provides information clearly differentiating Horn and Anderson and identifying Horn as "School Girl." TT1 Affidavit at ¶ 66; TT1 Supp. Affidavit at ¶¶ 8-9. Defendants fail to rebut CS-5's statements and fail to show that two isolated instances where an informant used the "School Girl" moniker to refer to Anderson are material omissions.

### e. The TT1 Affidavit omits whether CS-4 identified a photograph of Horn

Defendants argue that nowhere in the Affidavit does CS-4 identify Horn as "School Girl" by photo line-up or otherwise. While this is true, the TT1 Affidavit does set forth information about how CS-4 personally knew and associated with Horn. For instance, the TT1 Supplemental Affidavit states that CS-4 and Horn lived in same neighborhood,

associated with each other, and communicated by telephone. TT1 Supp. Affidavit at ¶ 6. Furthermore, CS-4 personally observed Horn "handle and sell" pills. *Id*. CS-4 reported that Horn personally told CS-4 that she (Horn) trafficked pills to Spokane and Horn showed CS-4 airline ticket receipts between Los Angeles and Spokane. *Id.* CS-4 reported that Horn would travel to Spokane every couple weeks, a fact corroborated by subpoenaed airline records. *Id.* Given this information, the fact that CS-4 did not identify Horn in a photo line-up is not material. *See Ruiz*, No. 13-30003 at 12 ("[M]agistrate judge not misled because witness provided 'ample' evidence in the form of first-hand observations implicating the suspect.") (citing *Ewing*, 588 F.3d at 1224).

### f. CS-5 identified pictures of Horn as "School Girl," but TT1 Affidavit does not establish CS-5's track record or provide corroborating identification information

It is true that CS-5 did not have an established track record when he/she identified a picture of Horn. But an established track record is only one factor the Court must consider under the "totality of the circumstances" approach to evaluating the reliability of an informant's tip. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Other factors the Court must consider are:

> First, a known informant's tip is thought to be more reliable than an anonymous informant's tip. That is because an anonymous informant typically cannot be questioned about the basis for knowing the information or motive for providing the tip, nor can the anonymous informant be held accountable for providing false information in violation of the law.
>
> Second, an informant with a proven track record of reliability is considered more reliable than an unproven informant.
>
> Third, the informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip—how the informant came to know the information.

*United States v. Rowland*, 464 F.3d 899, 907-08 (9th Cir. 2006) (internal citations omitted).

In this case, CS-5 was not an anonymous informant and CS-5 could have been held accountable if he/she provided false information. CS-5 provided detailed information and

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 8

did not have any apparent motive to fabricate the information. Regarding CS-5's basis of knowledge, the TT1 Affidavit is full of information regarding CS-5's involvement with Horn and others involved in the DTO. CS-5 personally observed Horn (along with Carmen, Haynes, and others) counting money and bagging pills in a Spokane apartment. TT1 Affidavit at ¶ 60. While at the apartment, CS-5 observed Horn on her phone saying, "how much you want?" TT1 Supp. Affidavit at ¶ 8. Horn would then leave the apartment and return with cash. *Id.* CS-5 reported that he/she observed Haynes, Anderson, and Horn partying at clubs in downtown Spokane, where they would meet with people inside the club, depart the area with a person for a short period of time, and then reenter the club without that person. TT1 Supp. Affidavit at ¶ 9. CS-5 ran into Horn in Los Angeles, but broke contact because CS-5 was fearful that Horn would retaliate against him/her for his/her failure to deliver pills. Immediately after this encounter, Horn made a phone call; pen register data revealed that Horn likely called Haynes. TT1 Supp. Affidavit at ¶ 10.

Under the totality of the circumstances, CS-5's non-anonymous cooperation, basis of knowledge, detailed reporting, and evidence corroborating information provided by CS-5 outweigh CS-5's lack of track record. The Court finds that CS-5 is sufficiently reliable to aid in determining probable cause against Horn.

### g. Affidavit omits information about how Horn used a different phone prior to her use of TT1

Defendants argue that, between May 26, 2012 and June 17, 2012, Horn used a phone number different than TT1 and that CS-4 used this number to communicate with Horn. Defendants point out that CS-4 reported that he/she never used this phone number to discuss pills with Horn. ECF No. 2284 at 132. Defendants argue that this is significant because there would not be probable cause to conclude that a phone possessed by Horn would be used to facilitate drug deals. The Government argues that Defendant fails to explain why the omission of an event that never occurred is either an intentional or reckless omission or material to probable cause. The Court shares the Government's skepticism.

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 9

The TT1 Affidavit specifically states that, on or about June 17, 2012, CS-4 and Horn met in a retail store in Los Angeles. TT1 Affidavit at ¶ 77. At that time, Horn gave CS-4 her new phone number—TT1—"so that CS-4 and HORN could further discuss dealing in Oxycontin with each other." *Id.* The fact that Horn may have used another phone prior to TT1 does not negate the fact that she personally gave the TT1 phone number to CS-4 so they could discuss pills. It is not altogether surprising that Horn gave CS-4 a new phone number as members of this DTO apparently changed phones and phone numbers on a regular basis. Defendants fail to show how the fact that Horn used a different phone prior to her use of TT1 refutes the clear statements contained in the TT1 Affidavit. As discussed *supra* and in the Court's prior rulings, the TT1 Affidavit contains sufficient facts to find probable cause to believe that Horn used TT1 in furtherance of drug trafficking activities.

### h. TT1 Affidavit omits that a law enforcement agent interpreted the recorded call between CS-4 and Horn as "argumentative"

Defendants argue that the TT1 Affidavit omitted the fact that Officer Meyer interpreted the recorded call, in which Horn indicated that she would sell pills to CS-4 if she (Horn) was in the area, as "argumentative." ECF No. 2284 at 136. This report also states that when Officer Meyer questioned CS-4 about the tone of the conversation, CS-4 stated that the conversation was not argumentative. *Id.* Defendants argue that this conversation is the most significant information relating to probable cause that TT1 would be used as a facility for drug trafficking. And the fact that an agent questioned the tone of the conversation implicates CS-4's credibility and reliability.

The Court disagrees. A third-party's interpretation of a conversation is not material to probable cause. *See Yeje-Cabrera*, 430 F.3d at 9-10 ("[E]ven if there is some relevance, the officer need not detail every single fact, so long as sufficient facts are described as to the crucial issue and material contrary facts are not omitted."). This is especially true when the party consenting to the recorded call insists that the third-party's interpretation was incorrect. In this instance, Officer Meyer's interpretation of the call is

not a "crucial issue" to probable cause and CS-4's explanation that the conversation was *not* argumentative is consistent with the TT1 Affidavit. Defendants fail to show why this was a material omission.

Defendants' Motion shall be denied.

4. <u>Motion to Suppress All Evidence after October 31, 2012</u>

The Court solicited argument from counsel on the Motion, but no one chose to argue the merits. The Motion is sweeping and overbroad and shall be denied.

5. <u>Motion to Suppress for Failure to Establish Reasonable Nexus between the Alleged Crime or Evidence and the Location to be Searched</u>

A search warrant application must establish a reasonable nexus between criminal conduct and the location to be searched. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002). Defendants argue that the warrant application for three residences failed to establish a reasonable nexus between the residences and the charged crimes. The three residences are: 15719 E. 4th Ave., Spokane, WA; 5426 212 St. SW, E-101, Mountlake Terrace, WA; and, 719 E. Acacia St., Apt. # 316, Glendale, CA. These residences are connected to Arvin Carmen and other co-Defendants.

**a. 15719 E. 4th Ave., Spokane, WA**

Carmen allegedly shared this residence with Mercedes Reeves. The Court already denied a suppression motion filed by Reeves regarding this same residence. *See* ECF No. 2366. The Court found that the search warrant affidavit established probable cause and a reasonable nexus. The Court's prior ruling forecloses the argument raised by Defendants in this Motion.

**b. 5426 212 St. SW, E-101, Mountlake Terrace, WA**

As detailed in the search warrant affidavit, this apartment was allegedly shared by Carmen and his girlfriend/paramour, co-Defendant Jessica Clinton, beginning around February/March 2012.

The Court finds that the search warrant application sets forth a reasonable nexus between Carmen and Clinton's criminal conduct and the location to be searched. The

1  search warrant application first sets forth the background of the investigation leading to the
2  Indictment against Carmen, Clinton, and the other Defendants in this case.  The search
3  warrant application went on to describe how (1) law enforcement officers identified
4  Clinton and Carmen as sharing the Mountlake Terrance apartment, ECF No. 2335, Ex. B
5  at ¶ 34; (2) Clinton used the Mountlake Terrace address as her forwarding address after
6  she moved to the address from Spokane,  ECF No. 2335, Ex. B at ¶ 45; (3)  CS-3 reported
7  that Clinton held Carmen's firearms and illegal drug proceeds,  ECF No. 2335, Ex. B at
8  ¶¶ 20, 22; (4) calls intercepted from TT5 (prior to the period between October 31, 2012
9  and November 15, 2012) established that Clinton maintained cash proceeds for Carmen
10 and such money was kept at the apartment, ECF No. 2335, Ex. B at ¶¶ 37-41; and, (5) law
11 enforcement surveillance confirmed both Carmen and Clinton were using the apartment,
12 ECF No. 2335, Ex. B at ¶ 46.  These facts are sufficient to show that there was probable
13 cause to believe that Carmen and Clinton were engaged in criminal activity and that it was
14 reasonable to believe that evidence of the criminal activity would be found at the
15 Mountlake Terrace apartment.

**c.  719 E. Acacia St., Apt. # 316, Glendale, CA**

As detailed in the search warrant affidavit, Carmen allegedly utilized this apartment and shared it with females, including Reeves and Daisy Ochoa, as early as October 2012.

The Court finds that the search warrant application sets forth a reasonable nexus between Carmen and Reeves' criminal conduct and the location to be searched.  The search warrant application first sets forth the background of the investigation leading to the Indictment against Carmen, Reeves, and the other Defendants in this case.  The search warrant application went on to describe how (1) CS-1, CS-2, CS-3, CS-5, CS-6, and CS-8 all provided information about Carmen's leadership role in drug trafficking between Los Angeles and Spokane, ECF No. 2335, Ex. B at ¶ 569; (2) Carmen was intercepted on nearly 2,000 pertinent calls, ECF No. 2335, Ex. B at ¶ 570; (3) in a communication intercepted from TT5,  Carmen identifies the Glendale address as his residence, ECF No. 2335, Ex. B at ¶ 573; (4) utilities for the Glendale address were subscribed to Daisy

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING  - 12

Ochoa, Carmen's girlfriend, *id.*; (5) law enforcement officers conducting surveillance observed Carmen's vehicle parked outside the apartment, *id.*; (6) Ochoa's and Reeves' mail was delivered to apartment, *id.*; and, (7) in a communication intercepted from TT5, Carmen and Clinton discuss Carmen firing guns at an indoor shooting range, and these statements were corroborated by an Instagram picture, ECF No. 2335, Ex. B at ¶ 574. These facts are sufficient to show that there was probable cause to believe that Carmen and Reeves were engaged in criminal activity and that it was reasonable to believe that evidence of the criminal activity would be found at the Glendale apartment.

Defendants' Motion shall be denied.

6. <u>Motion to Set Rule 16(a)(1) and Other Disclosure Deadline and Exclude Evidence for Failure to Comply</u>

The Government has already provided the great bulk of discovery. The Court has addressed expert disclosures by separate order. Grand Jury Transcripts and statements of testifying cooperating co-defendants shall be provided no later than 30 days prior to trial if in the possession of the Government. Any later made statements should be provided as quickly as possible. Defendants are encouraged to communicate with the Government regarding any confusion or questions related to discovery prior to filing any motions.

Accordingly,

**IT IS ORDERED** that:

1. Defendants' Motion and Memorandum Supporting the Motion to Reconsider the Order on Wiretap Suppression Motions for [TT] 1 and 2, filed May 21, 2014, **ECF No. 2181**, is **DENIED**.

2. Defendant Princeton Perry's Motion to Reconsider Denial of Suppression as to [TT] 7, filed May 28, 2014, **ECF No. 2195**, is **DENIED**.

3. Defendants' Motion and Memorandum Supporting the Motion to Grant and Evidentiary Hearing Pursuant to *Franks v. Delaware* and Suppress Evidence Obtained from Illegal Communication Intercepts from [TT] 1 & 2, filed June 6, 2014, **ECF No. 2252**, is **DENIED**.

4. Defendants' Motion to Suppress All Evidence after October 31, 2012, filed June 6, 2014, **ECF No. 2255**, is **DENIED**. The Court concluded that this Motion is sweeping and overbroad. If there is specific evidence derived from the suppressed recorded calls that is not otherwise subject to an exception to the fruits of the poisonous tree doctrine, Defendants are invited to file a motion addressing on that evidence.

5. Defendants' Motion to Suppress for Failure to Establish Reasonable Nexus between the Alleged Crime or Evidence and the Location to be Searched, filed June 6, 2014, **ECF No. 2256**, is **DENIED**.

6. Defendants' Motion to Set Rule 16(a)(1) and Other Disclosure Deadline and Exclude Evidence for Failure to Comply, filed June 6, 2014, **ECF No. 2257**, is **DENIED**. The Government is encouraged to provide discovery as available where other countervailing concerns are not present, such as safety issues, but otherwise, those deadlines discussed by the Government are sufficient.

7. Defendants' [Renewed] Motion to Unseal Legal Memoranda and Exhibits Relating to Defendant's Pretrial Motions, filed June 6, 2014, **ECF No. 2259**, is **DENIED**.

8. Defendants' Motion to Compel Discovery in Support of *Franks* Motion, filed June 6, 2014, **ECF No. 2219**, is **DENIED AS MOOT**.

9. Defendants' Motion to Extend Time to File Reply Memorandum, filed July 9, 2014, **ECF No. 2386**, is **GRANTED**.

10. Defendant Princeton Perry's Motion to Rule on Admissibility of Gang Evidence in Advance of Trial, filed June 6, 2014, **ECF No. 2227**, is **DENIED** pending the Court's decision on the *Daubert* issues.

11. Defendant Princeton Perry's Motion to Exclude Evidence Re: Gangs and/or Motion to Sever, filed April 7, 2014, **ECF No. 1912**, is **RESERVED**.

12. The following hearings are **CONFIRMED** as to all Defendants set out in the caption of this Order **EXCEPT** Defendants Meighan (27) and Shelmon (35) who have, subsequent to the pretrial conference, entered guilty pleas:

ORDER RE: JULY 15, 2014 PRETRIAL CONFERENCE
AND MOTION HEARING - 14

(a) The *Daubert* hearing on **September 3, 2014, at 8:30 a.m.**, in Spokane, Washington.

(b) The trial date of **September 29, 2014, at 9:00 a.m.**, in Spokane, Washington; and

(c) The final pretrial conference and Motion hearing of **September 22, 2014, at 8:30 a.m.**, in Spokane, Washington

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 17th day of July, 2014.

07-15-14

                s/ Wm. Fremming Nielsen
                WM. FREMMING NIELSEN
      SENIOR UNITED STATES DISTRICT JUDGE